## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF KENTUCKY
## OWENSBORO DIVISION

Kaye Wink, Individually and as next of kin
Of Donald Wink, deceased, and
also on behalf of all similarly situated persons,

**PLAINTIFF,**

**vs.**          **Civil Action Number:**          4:16-CV-90-JHM

**CLASS ACTION**

**JURY DEMAND**

NaturMed, Inc., d/b/a
the Institute for Vibrant Living,
an Indiana corporation

**DEFENDANT.**

---

### CLASS ACTION COMPLAINT

---

Plaintiff Kaye Wink, personally and as next of kin of Donald Wink (hereinafter "Plaintiff"), acting by and through the undersigned attorneys, bring this Class Action Complaint, individually and on behalf of all others similarly situated, against NaturMed, Inc. d/b/a the Institute for Vibrant Living ("NaturMed" or "Defendant"). All allegations in this Complaint are based upon the investigation of counsel, except the specific allegations pertaining to the named Plaintiff, which are based upon personal knowledge. In support of this Complaint, Plaintiff state as follows:

### I.  NATURE OF THE ACTION

1.     This statewide class action is brought on behalf of Kentucky consumers under (i) the Kentucky Consumer Protection Act, K.R.S. § 367.170, *et seq.*, (ii) Common Law for Breach

of Implied Warranty, (iii) Common Law Breach of Express Warranty, (iv) Common Law Claim

Unjust Enrichment, (v) Common Law Negligent Misrepresentation, (vi) Common Law Fraud by

Omission, (vii) Violation of the Product Liability Act of Kentucky,  K.R.S. § 411.300, *et seq*.,

(viii) Common Law Negligence, (ix) Injunctive Relief and (x) Common Law Punitive Damages

to remedy Defendants' wrongful actions in connection with their manufacture and sale of an

inherently defective and extremely dangerous dietary supplement.  The named Plaintiff and the

Class Members seek an award of compensatory damages against Defendants, as well as an award

of treble damages against Defendants for their intentional and willful concealment of the

inherently defective and dangerous condition posed by this supplement from the public.

2.      Dietary supplements manufactured, distributed and sold by Defendant contain

substances that are toxic to humans and that have resulted in the serious illness and death of

individuals who have consumed them.

3.      Defendant knew that their dietary supplements contained toxic substances, but

failed to inform consumers of that fact and allowed consumers to continue to purchase and ingest

those toxic substances.

4.      Defendant knew that their dietary supplements which contained toxic substances

were being resold and transferred, but failed to inform resellers of the toxicity, thereby allowing

the resale of known toxic substances for human consumption.

## II. JURISDICTION AND VENUE

(28 U.S.C. §1332(a) and (d), 28 U.S.C. §§1391(a), (b), and/or (c))

5.      This Court has subject matter jurisdiction pursuant to the Class Action Fairness

Act, 28 U.S.C. §1332(d) and diversity of citizenship under 28 U.S.C. §1332(a).  Plaintiff alleges,

upon information and belief, that there are thousands of Class members and that the aggregated

amount in controversy for Plaintiff and the Class exceeds five million dollars ($5,000,000.00) exclusive of interest and costs.  This Court has supplemental jurisdiction over the alleged state law claims presented herein pursuant to 28 U.S.C. §1367.

6.      Venue is proper in this district pursuant to 28 U.S.C. §§1391(a), (b), and/or (c) because Defendant conducts business in this district and a substantial part of the events and omissions giving rise to this action occurred in this district.

### III. JURY TRIAL DEMANDED

7.      Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff demands a jury trial of this action, which is Plaintiff's right pursuant to Amendment VII to the Constitution of the United States of America.

### IV. PARTIES

8.      Plaintiff Kaye Wink is an adult resident of Philpot, Kentucky, and is next of kin for her husband, Donald Wink, deceased.

9.      Mr. Wink ordered All Day Energy Greens - Original Hi-Octane Energy Drink for Health & Life (hereinafter "All Day Energy Greens") in Kentucky via Defendant's website.

10.      Defendant NaturMed, Inc. is a corporation registered in the State of Indiana and doing business in the State of Kentucky.  Defendant's principal address is 661 E. Howards Rd., Suite C, Camp Verde, Arizona 86322.

11.      Defendant can be served through its registered agent for service of process, Julianne S. Lis-Milam located at 8888 Keystone Crossing, Suite 600, Indianapolis, Indiana 46240.

12.      Defendant manufacturers, distributes, markets, and sells dietary supplements, including All Day Energy Greens®, Go Ruby Go!®, TriMotion Joint Health Formula, SeaNu

3

Hair™, ProstaEZ, Natto BP Plus™, Reconnect—Hearing Support™, Gluco Harmony® and Vision Clear®.

13.     Defendant sells All Day Energy Greens® directly to consumers and through various distributors and retailers.  It has generated tens of millions of dollars in revenues from the sale of dietary supplements and has spent significant amounts of money promoting trust and confidence among consumers of its supplements.

14.     Defendant holds itself out to the public as a manufacturer of safe, nutritious, beneficial, high-quality supplements.

## V. FACTUAL ALLEGATIONS

### Introductory Facts

15.     As the manufacturer, distributor and retail seller of dietary supplements, Defendant claims that it is "passionate about helping people improve their health so they can enjoy their life to the fullest" and that its products "reflect our belief that nutritional support is a key component to achieving lifelong health."

16.     Defendant further claims that its product offerings "combined the best of science and nature, giving you the most effective solutions for your health needs." On its website, Defendant makes a "promise to you" that:

- "Featuring pure, all natural ingredients and our entire line of health supplements, is formulated based on the latest scientific research, clinical trials, and case studies."[sic]

- "IVL regularly conducts Good Manufacturing Practices (GMP) reviews in accordance with FDA standards.  Our ingredients are tested and re-tested throughout the production process to verify the highest purity and potency."

- All IVL formulas are manufactured in the USA using only NSF Certified facilities which protects consumers by ensuring our supplements contain only the ingredients listed on the label in the dosage indicated."

17.     In particular, on its website and content packing, Defendant represents to consumers that its supplement known as "All Day Energy Greens - Original Hi-Octane Energy Drink for Health & Life" (hereinafter "All Day Energy Greens") is an "all natural energy drink" with "no chemical additives" that "Naturally Increases Energy, Improves Digestion, Rich in Antioxidant Superfoods, Supports Weight Management" and that it "helps support healthy digestive function."

18.     Furthermore, Defendant's product directions for All Day Energy Greens advise customers to "Supercharge your energy and overall health with All Day Energy Greens".

19.     Defendant's product directions make the following claims:  "This green superfood is a daily dose of veggies—and a whole lot of extra pep—in one glass!  JUST ONE TABLESPOON mixed in water or a smoothie makes for a truly delicious and refreshing beverage that exceeds the nutritional equivalent of FIVE servings of vegetables and fruits."

20.     Defendant's product directions specifically claim that All Day Energy Greens is "one of the most potent, energizing, immune-enhancing drinks available."

21.     These representations are false and materially misleading because All Day Energy Greens contain substances known to be harmful or toxic when ingested by human beings.

22.     In fact, in March 2016, Defendant issued a recall in the state of California for various lots of its dietary supplements based on their contamination with toxic substances.

23.     Defendant claimed that the recall was being performed due only to "some reported cases of gastrointestinal distress."

24.     In reality, Defendant's All Day Energy Greens were hazardous for human consumption and could cause severe, chronic illness, bodily impairment, and death -- none of which were disclosed to California consumers nor any other consumers. More importantly,

Defendant's recall of All Day Energy Greens was not published for the benefit of Kentucky consumers.

### Plaintiff's Purchase and Use of the Supplements

25.    Plaintiff purchased All Day Energy Greens via Defendant's website multiple times, with purchase and delivery occurring in the state of Kentucky.

26.    In purchasing the product, Plaintiff specifically relied on representations from Defendant that the dietary supplements offered by Defendant were safe, effective, immune-enhancing, and beneficial.

27.    In August 2015, Plaintiff began suffering severe abdominal pain after ingesting All Day Energy Greens.

28.    In September and October 2015, Plaintiff visited multiple doctors regarding his severe abdominal pain, including a primary care physician and a gastroenterologist.  Those physicians performed numerous tests, including an ultrasound, in an attempt to diagnose the abdominal pain.

29.    Prior to full treatment of his abdominal pain, Mr. Wink passed away in his sleep on October 27, 2015.

### Defendant Issues a Private Recall of its Supplement All Day Energy Greens, Failing to Disclose Its Dangerous Substances

30.    Upon information and belief, Defendant has received dozens of complaints from consumers of its products based on their illnesses.

31.    Upon information and belief, Defendant became aware of the dangerous and defective nature of its products by July 2015 at the latest.

32. Various lots of All Day Energy Greens contain active bacteria and other contaminations, which can cause nausea, vomiting, diarrhea, dehydration, coma, and death.

33. Defendant, in response to its knowledge that its products were contaminated, issued a private recall in March 2016. Specifically, on March 11, 2016, Defendant issued a recall of its All Day Energy Greens distributed nationwide between July 17, 2014 and July 21, 2015, due to reported gastrointestinal distress.

34. In connection with this recall, Defendant sent letters to consumers who had purchased the product directly from Defendant. The letter claimed, "a voluntary recall has been initiated as a precaution due to some reported cases of gastrointestinal distress possibly associated with consumption of a product you purchased from us."

35. Despite knowing that individuals commonly resell their products, however, Defendant did not issue a public recall of their supplements.

36. Upon information and belief, Defendant did not inform its distributors of the recall.

37. Upon information and belief, Defendant did not inform any retailer of its decision to recall its supplements or of the danger that those supplements may ultimately pose to consumers.

38. Despite knowing that individuals may come into contact with their products after being given those products by a customer, Defendant did not issue any public notification that members of the public should not consume its supplements due to the risk of severe health problems.

## VI.  CLASS ACTION ALLEGATIONS

39.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

40.     Plaintiff brings Counts I through X of this Complaint as a Class Action pursuant to Rule 23(a) and (b)(2) or, in the alternative, (b)(1) or (b)(3) of the Federal Rules of Civil Procedure on behalf of the following defined Classes:

A.      The Class:  From July 1, 2014 to present, Plaintiff and all similarly situated individuals and entities residing in Kentucky who purchased All Day Energy Greens.

B.      The Medical Treatment Subclass:  From July 1, 2014 to present, Plaintiff and all similarly situated individuals residing in Kentucky who purchased All Day Energy Greens for personal or household use and not for resale and who incurred or may incur any monetary damages due to illness, injury, or death resulting from the ingestion of All Day Energy Greens.

Excluded from the Class are named Defendant, and its affiliates and families and the judge assigned to this matter and his or her staff.

41.     **Numerosity**.  The requirements of Rule 23(a)(1) are satisfied in that there are too many Class Members for joinder of all of them to be practicable.  Upon information and belief, as of the filing of this Class Action Complaint there are greater than one thousand (1,000) consumers who purchased contaminated dietary supplements from Defendant and/or suffered either monetary loss, physical illness, or death as a result of their purchases.

42.     **Commonality**.  The claims of the Class Members raise numerous common issues of fact and law, thereby satisfying the requirements of Rule 23(a)(2).  Every issue concerning liability is common to all Class Members because all issues concern the actions of Defendant with respect to the manufacture, distribution, and sale of All Day Energy Greens.  These issues are common in that, when answered as to one class member, a significant number of Class

Members will be affected.  As to liability and relief, the counts set forth in this Class action claim raise the following common issues of fact and law, among others:

a.      whether All Day Energy Green contains dangerous substances not fit for consumption?

b.      whether Defendant knew or should have known that All Day Energy Green contained dangerous substances not fit for consumption?

c.      whether Defendant failed to take steps to ensure that All Day Energy Green did not contain dangerous substances;

d.      whether Defendant had a duty to disclose the true nature of All Day Energy Green to Plaintiff and the Class Members, including the fact that it contained dangerous substances;

e.      whether Defendant omitted and failed to disclose material facts concerning All Day Energy Green to Plaintiff and the Class Members, including the fact that it contained dangerous substances;

f.      whether Defendant violated its duty to warn Plaintiff and the Class Members of the risks of consuming All Day Energy Greens, including the risks associated with the substances contained therein.

g.      whether All Day Energy Greens is a defective product or an unreasonably dangerous product.

h.      whether Defendant should be enjoined from the sale of All Day Energy Greens

43.    **Typicality.**  The claims of the named Plaintiff are typical of the absent Class Members because they have a common source and rest upon the same legal and remedial theories, thereby satisfying the requirements of Rule 23(a)(3).  For example, the named Plaintiff

and the proposed class all suffered injury as a result of the purchase and consumption of All Day Energy Greens from Defendant.  The actions of Defendant have been systematic and have continued despite knowledge that it was selling defective and potentially deadly products. Defendant violated state and federal law in the same manner with each Class Member.  The nature of the inquiry to the named and unnamed Plaintiff is the same – the Defendant's manufacture, distribution, and sale of contaminated and potentially deadly dietary supplements.

44.    **Adequacy of Representation.**  The requirements of Rule 23(a)(4) are satisfied in that Plaintiff have a sufficient stake in the litigation vigorously to prosecute claims on behalf of the Class Members and Plaintiff's interests are aligned with those of the proposed class.  There are no defenses of a unique nature that may be asserted against Plaintiff individually, as distinguished from the other members of the Class, and the relief sought in this Count is common to the Class.  Plaintiff does not have any interest that is in conflict with or is antagonistic to the interests of the members of the Class, and have no conflict with any other member of the Class. Plaintiff has selected counsel who are skilled in class action litigation and are well-qualified to carry out their duties as class counsel, having been appointed Class Counsel in other class actions and handling large-scale, labor-intensive, legally-complex cases.

45.    **Declaratory and Equitable Relief**.  The requirements of Rule 23(b)(2) are satisfied in that the Defendant's actions affected and will affect the class members in a similar manner, making appropriate final declaratory and injunctive relief with respect to the Class as a whole.  For example, among other forms of equitable relief, Plaintiff seeks with respect to the Class as a whole a judicial declaration that the Defendant sold untested, contaminated, potentially deadly dietary supplements and that Defendant be enjoined from such activities in the future.

46.   **Inconsistent or Varying Adjudications**.  In the alternative, the requirements of Rule 23(b)(1)(A) are satisfied in that the prosecution of separate actions by individual Class Members would create a risk of inconsistent adjudications that would establish incompatible standards of conduct for the Defendant.  For example, one court could rule that it was improper for the Defendant to sell contaminated and potentially deadly dietary supplements, while another court could rule that such acts were proper.

47.   **Predominance and Superiority**.  Alternatively, all of the requirements for Rule 23(b)(3) are satisfied because the common factual and legal issues identified above are sufficiently cohesive to warrant adjudication by representation.  In particular, the Plaintiff and the Class Members have suffered a common cause of injury, namely the Defendant's manufacture, sale and distribution of contaminated and potentially deadly dietary supplements.  The Class Members' legal claims arise exclusively under Kentucky law and, therefore, do not involve the application of other states' laws which may have varying degrees of liability and proof.  Class action treatment is also superior to other available methods for the fair and efficient adjudication of this controversy, because individual litigation of the claims of all Class Members is economically unfeasible and procedurally impracticable.  The likelihood of individual Class Members prosecuting separate claims is remote and, even if every Class Member could afford individual litigation, the court system would be unduly burdened by individual litigation in such cases.  Additionally, individual litigation would also present the potential for varying, inconsistent or contradictory judgment while magnifying the delay and expense to all parties and to the court system, thus resulting in multiple trials of the same legal issue and creating the possibility of repetitious litigation.  As a result, the desirability to concentrate litigation in this forum is significantly present.  Plaintiff knows of no difficulty to be encountered in the

management of this action that would preclude its maintenance of a class action. Relief concerning Plaintiff's rights under the laws herein alleged and with respect to the Class would be proper.

## VII. CLAIMS FOR RELIEF

### COUNT I: FIRST CLAIM FOR RELIEF

**Violation of the Kentucky Consumer Protection Act**
**K.R.S. § 367.170, *et seq*.**

48.    Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

49.    At all times relevant, Defendants violated the Kentucky Consumer Protection Act, K.R.S. § 367.170, *et seq.* (the "KCPA"), by the use of false and misleading representations or omissions of material fact in connection with the marketing, promotion, and sale of All Day Energy Greens.

50.    Plaintiff and Class members are consumers, purchasers, or other persons entitled to the protection of the KCPA.

51.    The KCPA declares that unfair or deceptive acts or practices in the conduct of trade or commerce are unlawful. Defendant violated the KCPA in the manner described above.

52.    By reason of such violations and pursuant to the KCPA and other relevant consumer protection laws, Plaintiff and members of the proposed Class are entitled to recover all of the monies paid for the defective Products; to be compensated for the lost value arising out of the use of the product; and to recover any and all consequential damages recoverable under the law including, but not limited to, exposure to the dangerous effects of All Day Energy Greens, the increased risk of adverse health consequences, medical expense, past and future lost wages, and other losses.

53.     Privity existed between Plaintiff and Defendants, and between Class members and Defendants.

54.     In connection with the sale of the defective supplements to both Plaintiff and members of the proposed Class, Defendant, through its employees, agents and representatives, violated the KCPA and other consumer protection statutes by engaging in unfair or deceptive acts or practices; failing to disclose that All Day Energy Greens included dangerous substances and failing to adequately and fully compensate consumers.

55.     As a direct and proximate result of Defendant's unfair and/or deceptive acts or practices, Plaintiff and members of the proposed Class were damaged.

56.     Plaintiff and members of the proposed Class are entitled to equitable relief, including restitutionary disgorgement of monies unfairly, deceptively and/or unlawfully collected by Defendant and an injunction prohibiting Defendants from engaging in the same or similar practices described above.

57.     Pursuant to the KCPA, Plaintiff are entitled to all damages the Court deems necessary and proper, including treble damages for Defendant's intentional and systematic actions taken in bad faith.

58.     Pursuant to the KCPA, Plaintiff are entitled to all reasonable attorney's fees and costs.

## COUNT II:  SECOND CLAIM FOR RELIEF

### Breach of Implied Warranty

59.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

60.     Plaintiff purchased All Day Energy Greens produced by Defendant based on the implied understanding that All Day Energy Greens was safe for Plaintiff to consume.  Privity existed between Plaintiff and Defendants, and between Class members and Defendants.

61.     All Day Energy Greens was not and is not safe for human beings to consume and has caused people to become ill and/or die after consumption.

62.     All Day Energy Greens constitutes a "good" within the meaning of Uniform Commercial Code Article 2, K.R.S. § 355.2-105(1).

63.     Pursuant to K.R.S. § 355.2-314 & 315 and Kentucky common law, Defendant's conduct as described herein constitutes a breach of the implied warranty of merchantability and the implied warranty of fitness for a particular purpose in that All Day Energy Greens is dangerous and not fit for its purpose of human consumption.

64.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

65.     Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and Class Members are entitled to an award of exemplary and punitive damages according to proof.

## COUNT III: THIRD CLAIM FOR RELIEF

### Breach of Express Warranty

66.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

67.     Privity existed between Plaintiff and Defendants, and between Class members and Defendants.

68.     The representations on Defendant's packaging created an express warranty that the contents conform to the presentations of the package, including that All Day Energy Greens is fit for consumption by human beings, under both K.R.S. § 355.2-313 and common law and. Said representations include, but are not limited to, All Day Energy Greens being safe, "immune-enhancing" and promoting healthy digestive function.

69.     Plaintiff and Class Members reasonably and foreseeably relied on this warranty in the contract for purchase of All Day Energy Greens for the purpose of human consumption, such that the warranty became a basis of the bargain by which Plaintiff and the Class chose to purchase All Day Energy Greens.

70.     All Day Energy Greens was not and is not safe for human beings to consume and has caused people to become ill and/or die after consumption.

71.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

72.     Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and Class Members are entitled to an award of exemplary and punitive damages according to proof.

### COUNT IV: FOURTH CLAIM FOR RELIEF

### Unjust Enrichment

73.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

74.     Defendant has received, and continues to receive, a benefit at the expense of Plaintiff and the Class and has knowledge of that benefit.

75.     Plaintiff and the Class received no benefit from Defendant's sale of a contaminated dietary supplement.

76.     The circumstances are such that it would be inequitable for Defendant to retain the benefit it gained at the expense of Plaintiff and Class Members.

77.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

## COUNT V:  FIFTH CLAIM FOR RELIEF

### Negligent Misrepresentation

78.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

79.     Defendant owed a duty of care to Plaintiff and the Class to ensure all dietary supplements it sold were free from dangerous contaminants and would not cause deleterious and harmful effects upon consumption by its customers. It further owed a duty to Plaintiff and the Class to convey accurate and complete information concerning the risks and dangers associated with the purchase and consumption of All Day Energy Greens.

80.     Defendant breached this duty by selling All Day Energy Greens containing contaminations which are harmful and deleterious, failing to use proper manufacturing and production practices, failing perform appropriate quality testing and control, failing to properly investigate reports of contamination, illness, and/or death, and failing to adequately warn consumers of the dangers of All Day Energy Greens.

81.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

## COUNT VI: SIXTH CLAIM FOR RELIEF

### Violation of the Product Liability Act of Kentucky, K.R.S. § 411.300, *et seq*

82.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

83.     Defendant, as set forth above, is a manufacturer and distributor of All Day Energy Greens.

84.     All Day Energy Greens in all its forms is defective in design and/or manufacture in that it contains an ingredient or ingredients that are harmful to human upon consumption.

85.     All Day Energy Greens was further defective due to inadequate testing.

86.     All Day Energy Greens is further defective and/or unreasonably dangerous because it does not meet the reasonable expectations of the ordinary consumer as to its safety.

87.     Defendant knew that All Day Energy Greens would be purchased and consumed without inspection, or testing for defects and harmful substances by the purchaser.

88.     All Day Energy Greens was under the exclusive control of Defendant and was sold without warning as to its health risks.  Defendant had a duty to warn purchasers of the health risks posed by All Day Energy Greens in an effective manner.  Such warnings should have been placed on packaging at point-of-sale or in another manner reasonably calculated to fairly warn Plaintiff and Class Members of the danger posed by All Day Energy Greens.

89.     The kinds of harm that befell Plaintiff and Class Members were foreseeable results of the defects in All Day Energy Greens.

90.     Neither Plaintiff nor any Class Member had any reason to know, prior to or at the time of purchase, or at any time prior to their injuries, that All Day Energy Greens was defective and harmful.

91.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

92.     Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and Class Members are entitled to an award of exemplary and punitive damages according to proof

## COUNT VII:  SEVENTH CLAIM FOR RELIEF

### Fraud by Omission

93.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

94.     As the manufacturer and seller of All Day Energy Greens (which would be consumed for alleged health benefits), Defendant owed a duty to Plaintiff and the Class Members to disclose all material facts to them, including the risks associated with the consumption  of All Day Energy Greens.  Defendant intentionally or with reckless disregard failed to make these material disclosures. It did so because making these required disclosures would virtually destroy its ability to successfully market All Day Energy Greens.

95.     As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

96.     Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and Class Members are entitled to an award of exemplary and punitive damages according to proof.

## COUNT VIII:  EIGHTH CLAIM FOR RELIEF

### Negligence

97.     Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

98.     Defendant owed a duty of care to Plaintiff and the Class to ensure all dietary supplements it sold were free from dangerous contaminants and would not cause deleterious and harmful effects upon consumption by its customers. It further owed a duty to Plaintiff and the Class to convey accurate and complete information concerning the risks and dangers associated with the purchase and consumption of All Day Energy Greens.

99.     Defendant breached this duty by selling All Day Energy Greens containing contaminations which are harmful and deleterious, failing to use proper manufacturing and production practices, failing perform appropriate quality testing and control, failing to properly investigate reports of contamination, illness, and/or death, and failing to adequately warn consumers of the dangers of All Day Energy Greens.

100.    As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

101.    As a direct and proximate result of the Defendant's acts and/or omissions, Plaintiff and Class Members have suffered injuries, damages and losses as alleged in this Complaint.

102.    Defendant's acts and/or omissions were intentional, fraudulent, malicious, or reckless and, thereby, Plaintiff and Class Members are entitled to an award of exemplary and punitive damages according to proof.

### COUNT IX:  NINTH CLAIM FOR RELIEF

### Injunctive Relief

103.    Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

104.    Defendant routinely and systematically delays in providing adequate warnings of the dangers posed by its dietary supplement, particularly the danger caused by the known contamination.

105.    Without judicial intervention, it is likely that Defendant's wrongful conduct will continue unabated, and will continue to harm individuals such as Plaintiff and Class Members.

106.    After a full and final hearing on this matter, the Court should enter a permanent injunction prohibiting Defendant from engaging in the unlawful and wrongful conduct alleged in this Complaint, and any other injunctive relief that the Court deems appropriate.

### COUNT X:  PUNITIVE DAMAGES

### K.R.S. §§ 411.184, 411.186

107.    Plaintiff re-alleges all preceding paragraphs of this Complaint as if set forth verbatim herein.

108.     Defendant's actions described in this Complaint were intentional, fraudulent, malicious, or reckless, warranting punitive damages in an amount to be determined by the jury after trial of this cause.

## VIII. REQUEST FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, on behalf of themselves and all similarly situated persons, respectfully pray for a judgment on each Count of the Class Action Complaint and the following relief:

a.     An Order certifying that this action may be maintained as a class action, appointing Plaintiff and their counsel to represent the Class, and directing that reasonable notice of this action be given by the Defendants to all Class Members;

b.     A monetary judgment in favor of the Plaintiff and Class Members and against the Defendant for actual or compensatory and presumed damages sustained by the Plaintiff and Class Members;

c.     Punitive damages in an amount determined by a jury;

d.     A judgment in favor of the Plaintiff and Class Members and against the Defendants for damages and for a permanent injunction against the continued manufacture, distribution, and sale of contaminated dietary supplements;

e.     A judgment in favor of the Plaintiff and Class Members and against the Defendants for treble damages pursuant to the Kentucky Consumer Protection Act, plus attorneys' fees and all costs of this action and all of the Plaintiff's related litigation costs, litigation fees, and litigation expenses, as well as pre-judgment and post-judgment interest as allowed by law;

f.      A judgment in favor of the Plaintiff and against the Defendants for such other relief, either general or specific, which the Court may deem appropriate in law or equity and for which the Plaintiff duly pray.

RESPECTFULLY SUBMITTED, this the 12th day of July, 2016.

Respectfully submitted,

s/ Tim Edwards
s/ Kevin McCormack
Tim Edwards, (Ky. Bar No. 95791)
Kevin M. McCormack, (Tenn. Bar. No. 29295)*
BALLIN, BALLIN & FISHMAN, P.C.
200 Jefferson Ave., Suite 1250
Memphis, TN 38103
Office (901) 525-6278
Fax (901) 525-6294
tedwards@bbfpc.com
kmccormack@bbfpc.com

s/ Frank L. Watson, III
s/ William F. Burns
Frank L. Watson, III (Tenn. Bar No. 15073)*
William F. Burns (Tenn. Bar No. 17908)*
WATSON BURNS, PLLC
253 Adams Avenue
Memphis, TN 38103
Phone: (901) 529-7996
Fax: (901) 529-7998
Email:  fwatson@watsonburns.com
Email:  bburns@watsonburns.com

*Pro Hac Vice Motion to be filed LR 83.2

Counsel for Plaintiff and the absent putative Class Members